INFORMATION SYSTEMS AND
NETWORKS CORPORATION,
Plaintiff,

v.

The UNITED STATES, Defendant.

No. 91–1643C.

United States Court of Federal Claims.

Nov. 21, 1995.

Michael K. Love, Bethesda, Maryland, for plaintiff.

Todd M. Hughes, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger and Director David M. Cohen, for defendant. Bryan R. O'Boyle, of counsel.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on plaintiff's motion for partial summary judgment, filed

pursuant to RCFC 56(c). Plaintiff seeks summary judgment only on the basis of liability, with, presumably, quantum to be determined later. For the reasons set forth below, the court denies plaintiff's motion.

## FACTS

This case stems from contract No. F49642–88–D–0054, which the Department of Air Force, Air Force District of Washington ("Air Force" or "government") awarded to the Small Business Administration ("SBA") on September 22, 1988. The SBA then subcontracted with Information Systems and Networks Corporation ("ISN") for performance of the contract. Under the contract, ISN was required to provide the Air Force with labor services for developing a computer system that would support automatic data processing activities at the 7th Communications Group in Washington, D.C.

As part of the contract, a government Statement of Work ("SOW") required ISN to convert the PFORMS data base from the Air Force's leased Honeywell computer to a new IBM mainframe computer.[1] The SOW called for ISN to use VSAM software as the operating system while converting the data base.[2] The crux of the dispute arises out of ISN's untimely delivery of, and certain alleged defects found in the converted PFORMS data base. The delivery of this particular system is referred to as Delivery Order 5004.

On July 3, 1990, ISN delivered the PFORMS project to the Air Force, but the system failed to allow multiple users as required in the specifications. In response to a July 9, 1990 request from the contracting officer, ISN submitted several suggestions to the Air Force on how the problems with the system could be corrected. ISN's July 19, 1990 response suggested a target delivery date of August 16, 1990 for the corrected system. ISN failed to meet the target date, allegedly because its subcontractor "walked off the job" after ISN was unable to make payment as a result of the government's

withholding payment to ISN. Consequently, the contracting officer established two delivery dates of September 15, 1990 and October 1, 1990 whereby portions of the project needed to be finalized. Displeased with the work ISN submitted on these two dates, the government sent ISN a Show Cause Notice on October 3, 1990, giving it an opportunity to present any facts that may bear on the question of a possible default. ISN responded to the Notice on October 12, 1990, through counsel, attempting to establish its position on the delays and setbacks surrounding the previous months. The parties communicated minimally during the months that followed, and ISN submitted a claim to the contracting officer under the Contract Disputes Act ("CDA"), 41 U.S.C. § 605 (1988 & Supp. V 1993), on March 25, 1991. On May 21, 1991, seven months after the government issued its Show Cause Notice, the Air Force terminated ISN for default. The "effective date" of the termination was March 19, 1991—six days before ISN submitted its CDA claim.

ISN claims that the government neither specifically acknowledged nor answered ISN's response to the Show Cause Notice. The government refutes that claim by pointing to language in the termination, which stated that ISN's response was insufficient. Beyond these general facts explaining the basic outline of the contract and the schedule of events surrounding delivery of the converted database, the parties' respective descriptions and characterization of this dispute differ substantially.

In the termination notice, the Air Force alleged several deficiencies in ISN's attempted satisfaction of Delivery Order 5004. First, the Air Force alleged that contrary to the specifications, the system failed to support multiple users. The Air Force attributes this multi-user failure to ISN allegedly suggesting that it use the VSAM software in the TSO/ISPF environment, an environment not capable of supporting multiple users.[3]

1. PFORMS is an automatic data processing system used in preparing budgets and comparing budget figures with actual expenditures from certain Air Force programs.

2. VSAM is a software operating system.

3. TSO/ISPF is a commercial IBM software package which allows users to communicate with a mainframe computer.

Although the Air Force made the final decision to use TSO/ISPF, the government argues that it relied on ISN's expert opinion to use that environment. However, ISN alleges that it used the TSO/ISPF environment at the government's direction, and because the government directed it to use TSO/ISPF, ISN cannot be terminated for default for following the government's instructions. Next, in support of terminating ISN for default, the Air Force alleged that ISN missed several deadlines, and when the program was finally submitted, ISN misrepresented the system's capabilities. Even after granting ISN an extension of time, the Air Force claimed that the system was "totally inoperable."

On November 27, 1991, ISN filed this action alleging breach of contract, requesting that the termination for default be converted to a termination for convenience, and claiming $458,184.99 still owed by the Air Force for services rendered.

As a result of ISN's delays and the alleged deficiencies in the submitted system, the Air Force filed a $52,892 counterclaim against ISN. This counterclaim represents the government's alleged cost of bringing the defective system into compliance with the specifications.

## DISCUSSION

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c). In evaluating a motion for summary judgment, any doubt as to whether a genuine issue of material fact exists must be resolved in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Campbell v. United States*, 2 Cl.Ct. 247, 249 (1983). A genuine issue of material fact is one that would change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, the court does not "weigh the evidence and determine the truth of the matter but [only] determine[s] whether there is a genuine issue for trial." *Id.* at

249, 106 S.Ct. at 2511. When the moving party has carried its burden, the non-moving party must come forward with specific facts showing that a genuine issue for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The non-moving party may not discharge its burden by cryptic, conclusory, or generalized responses. *See Willetts v. Ford Motor Co.*, 583 F.2d 852, 856 (6th Cir.1978); *Tunnell v. Wiley*, 514 F.2d 971, 976 (3d Cir.1975).

Plaintiff asks the court to grant summary judgment on four issues: (1) that the Air Force constructively changed the contract by requiring additional work; (2) that the Air Force breached its contract with ISN; (3) that the Air Force improperly terminated the contract with ISN, and thus, the termination for default should be converted to a termination for convenience; and (4) that ISN is not liable under the government's counterclaim. A comprehensive analysis of the parties' memoranda leads the court to conclude that several genuine issues of material fact preclude summary judgment in this case.

At the heart of this dispute lies the question of whether Delivery Order 5004 was governed primarily by design or performance specifications. The difference between these two specifications is well settled. Design specifications "describe in precise detail the materials to be employed and the manner in which the work is to be performed." *Blake Constr. Co. v. United States*, 987 F.2d 743, 745 (Fed.Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 438, 126 L.Ed.2d 372 (1993). Design specifications afford no discretion to the contractor, who is "required to follow them as one would a road map." *Id.* (quoting *J.L. Simmons Co. v. United States*, 188 Ct.Cl. 684, 689, 412 F.2d 1360 (1969)). Performance specifications, on the other hand, "set forth an objective or standard to be achieved, and the successful bidder is expected to exercise his ingenuity in achieving that objective or standard of performance, selecting the means and assuming a corresponding responsibility for that selection." *Id.* In essence, plaintiff argues that the specifications strictly instruct how the conversion process should take place, beginning with the

alleged mandate to use the TSO/ISPF software. ISN claims that this mandate was an impossible specification, thus causing the government to breach the contract. The government claims that ISN made the decision to use TSO/ISPF, a system which does not allow multiple users to operate the system at the same time. Whichever party was responsible for deciding to use the TSO/ISPF software could provide substantial insight into which party is responsible for the multi-user failure. This dispute clearly represents a genuine issue of material fact which cannot be disposed of on summary judgment.

■ Plaintiff further argues that the Air Force breached the contract by failing to cooperate with ISN. ISN claims that the government failed to provide ISN with certain test results relating to the multi-user failure. If the Air Force would have notified ISN of the problems associated with the system earlier on, which the Air Force knew about, ISN argues, the defects could have been corrected in time for delivery. Moreover, ISN accuses the government of refusing to communicate, which too was a failure to cooperate. Plaintiff cites numerous cases standing for the proposition that the government has an implied duty to cooperate with its contractors. That the parties have a duty to cooperate with each other is not disputed. *See Malone v. United States*, 849 F.2d 1441, 1445 (Fed.Cir.1988). Rather, the issue at dispute here is whether the government breached that duty to cooperate. In fact, both parties have submitted contradicting, sworn affidavits in support of their respective positions. For example, Dana Palmer, ISN's program director on Delivery Order 5004 stated in a sworn affidavit that "the Government failed to provide ISN with the test data, as required by the SOW, for ISN to perform testing." Affidavit of Dana Palmer, ¶ 4, June 30, 1994. Yet Sophonia Simms, who was responsible for overseeing the conversion project for the Air Force, stated in her affidavit that "the 7th Communications Group provided ISN with test data, so that ISN could test on an on-going basis their software programming work for the PFORMS conversion...." Declaration of Sophonia Simms, ¶ 7, June 14, 1995. Clearly these polar declarations constitute a genuine issue of material fact. Inasmuch as the court does not "weigh the evidence and determine the truth of the matter" when deciding a motion for summary judgment, the court has no choice but to allow the parties to present their evidence at trial for a factual determination. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510.

Delivery Order 5004 was originally scheduled for completion on July 3, 1990. It was near this time when the submitted system failed the multi-user test, causing the contracting officer to demand that ISN fix any deficiencies. The parties thereupon agreed on a subsequent schedule outlining new delivery dates. ISN agreed to adhere to those dates in a letter dated September 11, 1990, making it clear that it did so at the government's direction. The Air Force maintains that this extension of the delivery date was a reasonable extension of time, not constituting a waiver of schedule. ISN, however, argues that the extension of time "proved to be unreasonable," and resulted in a waiver of the original delivery date. The court notes that when ISN agreed to adhere to the new schedule, it did not express a concern, at that time, of unreasonableness. Nonetheless, whether the extension of time constituted a waiver of schedule is a question of law which cannot be determined by the facts now before the court. Hence, another issue of material fact concerns the circumstances surrounding the extension of time and whether that extension was reasonable. Both parties agree that the delivery schedule was indeed extended, yet their characterization of the extension is quite different. "Reasonableness is a question of fact," and as such cannot be decided on summary judgment. *Engle Investors v. United States*, 21 Cl.Ct. 543, 550 (1989).

■ ISN further contends that because the government waited so long, until May 21, 1991, to terminate for default, it waived its right to do so. Both parties cite *DeVito v. United States*, 188 Ct.Cl. 979, 413 F.2d 1147 (1969), in support of their respective positions. *DeVito* outlines a two-part test to determine whether the government has waived a schedule:

The necessary elements of an election by the non-defaulting party to waive default in delivery under a contract are (1) failure to terminate within a *reasonable* time after the default under circumstances indicating forbearance, and (2) *reliance* by the contractor on the failure to terminate and continued performance by him under the contract, with the Government's knowledge and implied or express consent.

*Id.* at 990–91, 413 F.2d 1147 (emphasis added).

Just after setting forth this two-part analysis, the court acknowledged that "[w]hat is a reasonable time for the Government to terminate a contract after default depends on the circumstances of each case." *Id.* at 991, 413 F.2d 1147. *DeVito* was a case involving "undisputed facts," *id.* at 994, allowing the court to determine whether the fact-sensitive, two-part test had been satisfied. As discussed above, in order for this court to analyze the *DeVito* test, it would be necessary to determine whether the time in which the government failed to terminate ISN was *reasonable*—clearly a genuine issue of material fact demonstrated by the conflicting evidence. "Whether the government has acted within a reasonable time after default is a question of fact." *International Fidelity Ins. Co. v. United States,* 25 Cl.Ct. 469, 480 (1992).

Similarly, deciding whether ISN relied on the government's failure to terminate would require the court to decide another genuine issue of material fact. Reliance is a question of fact, and because the parties have supplied conflicting evidence on the question of reliance, summary judgment is inappropriate. ISN provided the affidavit of Dana Palmer which states that ISN continued to work on the project even after the extended deadlines had passed, thus relying on the government's forbearance. However, the government points to the October 3, 1990 Show Cause Notice sent to ISN by the Air Force as a lack of forbearance on ISN's failure to meet the schedule. The government also turns the court's attention to a letter from Karen Hendricks, ISN's contracts administration manager, dated October 29, 1990, which states that "ISN has performed all work and delivered all data required under [Delivery Order 5004]," by the specified due dates. If ISN performed and delivered all necessary work on the Delivery Order by the due dates, the government argues, then ISN had no need to continue working on the project in reliance on the Air Force's failure to terminate. Summary judgment is not the appropriate method to analyze the credibility of this evidence, nor to try and reconcile these obvious factual inconsistencies.

In addition to the disputed facts discussed above, which clearly prevent the court from granting summary judgement, the parties have raised other issues that this opinion does not address. Some other possible remaining issues of material fact include: (1) whether the government constructively changed the contract by requiring ISN to perform additional work; (2) issues relating to what seemed to be installment payments by the government to ISN, and the reasons for terminating those payments, and whether those reasons were appropriate; (3) whether the government acted in bad faith, or with an improper motive, in terminating ISN; and (4) whether the government's counterclaim has merit.

## CONCLUSION

Based on the foregoing discussion, plaintiff's motion for partial summary judgment on the issue of liability is denied. The parties are to confer and report back to the court within two weeks from the date of this order with a proposed trial schedule.

**IT IS SO ORDERED.**