**THE HUNT CONSTRUCTION GROUP, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 99–138C.

United States Court of Federal Claims.

Feb. 2, 2001.[1]

---

**1.** This opinion was issued under seal on January 24, 2001. Pursuant to ¶ 2 of the ordering language, the parties were requested to identify protected/privileged material subject to deletion. No deletions were requested.

Joseph J. Brigati, Washington, DC, for plaintiff. Lance W. High, Kirkpatrick & Lockhart, LLP, of counsel.

Thomas D. Dinackus, Washington, DC, with whom was Assistant Attorney General David W. Ogden, for defendant.

*OPINION*

MILLER, Judge.

This case is before the court after argument on cross-motions for summary judgment. The issue to be decided is whether a special notice in a solicitation which stated that "Sales and use tax exemptions should be sought where applicable" is sufficient to obligate the Government to reimburse a successful offeror for those exemptions upon completion of its contract.

### FACTS

In May 1996 the Department of Veterans Affairs ("VA") issued a Solicitation for Proposals (the "Solicitation") for construction of an Ambulatory Care Clinic Addition in Phoenix, Arizona (the "Project"). The Solicitation contained two important references to tax exemptions. First, on the page immediately following the Table of Contents, a "Special Notice" was printed on green paper. This piece of paper was blank except for the title "SPECIAL NOTICE" and text that read:

I. Sales and Use Taxes:

   (a) Sales and use tax exemptions should be sought where applicable.

— END —

Second, on page 01001–20, the Solicitation included a standard clause from 48 C.F.R. (FAR) § 52.229–3 (1999), "Federal, State, and Local Taxes," which stated, in relevant part, that "[t]he contract price includes all applicable Federal, State, and local taxes and duties," and "[t]he Government shall, without liability, furnish evidence appropriate to establish exemption from any Federal, State, or local tax when the Contractor requests such evidence and a reasonable basis exists to sustain the exemption."[2]

The Hunt Construction Group, Inc. ("plaintiff"), was one of six offerors on the Project. Plaintiff's representatives, Robert S. Aylesworth, Jr., and James Linyard, reviewed the Solicitation. After discussing the two tax exemption provisions, Messrs. Aylesworth and Linyard researched and found that the only applicable exemption to state and use

---

**2.** The clause was restated in a subsequent amendment to the Solicitation.

taxes in Arizona was for the purchase of permanent building materials. Thus, on June 27, 1996, Messrs. Aylesworth and Linyard submitted on behalf of plaintiff a bid that reflected their assumption that, pursuant to the Special Notice, they would not have to pay state and local sales and use taxes on permanent materials.[3] Indisputably, plaintiff's experience with Arizona State exemptions was consistent with this assumption, and this was plaintiff's first federal construction contract. On July 19, 1996, plaintiff submitted its best and final offer (the "BAFO"), which also omitted the applicable sales and use taxes, in the amount of $25,503,000.00.

Another offeror, McCarthy Brothers Company ("McCarthy") also submitted an offer on June 27, 1996. The McCarthy offer contained the following qualification:

> 1) In accordance with the special notice contained the RFP submittal package dated May 21, 1996, McCarthy has sought out appropriate sales and use tax exemptions for this project.
>
> We have not included any such tax for the permanent materials purchase by McCarthy as agent for the VA's account.
>
> To obtain this benefit, the VA must sign an Agency Agreement similar to the attached form in accordance with A.A.C.R. 15–5–629.B. simultaneous with signing the contract. McCarthy has utilized the arrangement successfully on several projects.

McCarthy also provided a form of agency agreement with its proposal.

On July 12, 1996, Contracting Officer Francis E. Sullivan wrote McCarthy regarding its offer. After discussing other aspects of the offer, the contracting officer stated:

> Your offer on Item 17 states, "see the attached Qualifications." I consider the qualifications not in compliance with Federal Acquisition Regulation (FAR) 14.404–2(d)(6)—limiting the rights of the Govern-

ment. You are requested to remove your qualifications.

On July 19, 1996, McCarthy submitted a BAFO, with the following explanation:

> 6. We remove our qualification on Item 17.
> 7. Our original price for this work was $27,198,000. We now make a final and best offer as follows of $26,695,000 on the same basis as our original proposal (without sales tax on permanent materials.) [*sic*] which can be further amended by you if you select any of the following alternates.
>> 1. Add $496,000 if the VA is unwilling to sign the Arizona Revenue Department Hospital Agency Agreement concurrent with the contract so as to take advantage of the sales tax exemption on permanent materials.

In the course of evaluating the offerors' prices, Contracting Officer Sullivan added $496,000.00 to McCarthy's offer. He had no communications with plaintiff concerning any aspect of McCarthy's offer.

Plaintiff was the low offeror and was awarded Contract V101DC0138 on August 27, 1996. Plaintiff immediately began to work on the project and several months later, on January 10, 1997, wrote the contracting officer requesting that the VA sign an agency agreement so that plaintiff could obtain the tax exemption for the purchase of permanent materials. VA counsel contacted plaintiff on February 16, 1997, expressing concerns about the arrangement. Plaintiff wrote to the VA on February 26, 1997, and March 10, 1997, in an effort to assuage the VA's concerns about the agency agreement and provided potentially acceptable agency agreements. On April 9, 1997, Contracting Officer Sullivan advised plaintiff that its request was "not in the interest of the Government," explaining:

> Federal Acquisition Regulation (FAR) Subpart 29.303(a) states "Prime contractors and subcontractors shall not normally

---

**3.** According to plaintiff, in order for a general contractor to obtain the exemption from the sales and use taxes, a "qualifying" hospital must designate the general contractor as its agent. Then, when the general contractor purchases perma- nent materials, it does so on behalf of the "qualifying" hospital and is exempt from sales and use taxes. The court accepts plaintiff's proffer on this point in order to resolve the parties' motions for summary judgment.

be designated as agents of the Government for purposes of claiming immunity from State or local sales or use taxes...". Although you have presented legal issues which have bearing within the State of Arizona, you have not presented any federal agency that has allowed the use of the Agency Purchase program.

On May 22, 1998, plaintiff submitted a claim for reimbursement of state sales taxes on the purchase of permanent construction materials. On June 30, 1998, the contracting officer issued a final decision denying plaintiff's claim. Plaintiff originally estimated its total tax expense on this project at $1,089,000.00 and included $417,000.00 in its offer for taxes that would not be covered by exemptions. Plaintiff now seeks the difference between these amounts—$672,000.00—for exemptions that plaintiff was unable to obtain and thus did not account for in its offer.

## DISCUSSION

### 1. *Provisions in the solicitation*

The central issue in this case is the interpretation of the two tax exemption provisions in the Solicitation. The first clause, the Special Notice, was printed on the first page of the solicitation on green paper, while the rest of the Solicitation was printed on white paper. The Special Notice states that "[s]ales and use tax exemptions should be sought where applicable." The second clause, FAR § 52.229–3, included in the compendium of reprinted FAR provisions, states that "[t]he contract price includes all applicable Federal, State, and local taxes and duties" and that "[t]he Government shall, without liability, furnish evidence appropriate to establish exemption from any ... State, or local tax when the Contractor requests such evidence ...."

■ Both parties' motions involve issues of contract interpretation, which are particularly well-suited for resolution by summary judgment. *See e.g., Textron Defense Sys. v. Widnall,* 143 F.3d 1465, 1468 (Fed.Cir.1998). To determine the meaning of a particular contractual provision, the court first must look to plain meaning of the contract. *See*

*id.* at 1468; *Aleman Food Servs., Inc. v. United States,* 994 F.2d 819, 822 (Fed.Cir. 1993). When the contract language is unambiguous, the court's inquiry is at an end, and the plain language of the contract is controlling. *See Textron Defense,* 143 F.3d at 1469. A contract term is unambiguous when there is only one reasonable interpretation. *See Triax Pac., Inc. v. West,* 130 F.3d 1469, 1473 (Fed.Cir.1998); *A–Transport Northwest Co., Inc. v. United States,* 36 F.3d 1576, 1584 (Fed.Cir.1994); *see also Community Heating & Plumbing Co. v. Kelso,* 987 F.2d 1575, 1579 (Fed.Cir.1993) (noting that contract is ambiguous where two reasonable interpretations are consistent with contract language). The mere fact that the parties may disagree with regard to the interpretation of a specific provision does not, in and of itself, render that provision ambiguous. *See Community Heating & Plumbing,* 987 F.2d at 1579; *Brunswick Corp. v. United States,* 951 F.2d 334, 337 (Fed.Cir.1991).

■ The contract must be considered as a whole and interpreted to "'effectuate its spirit and purpose,'" giving "'reasonable meaning to all parts.'" *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991) (quoting *Arizona v. United States,* 216 Ct.Cl. 221, 235–36, 575 F.2d 855, 863 (1978)); *see Fortec Constructors v. United States,* 760 F.2d 1288, 1292 (Fed.Cir.1985). Such a construction "'will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result.'" *Gould,* 935 F.2d at 1274 (quoting *Arizona,* 216 Ct.Cl. at 236, 575 F.2d at 863); *see Fortec Constructors,* 760 F.2d at 1292.

#### 1) *Plain meaning*

■ The court begins, as it must, with the plain language of the provisions. FAR § 52.229–3 unambiguously places the responsibility for determining whether an exemption is available under a contract on the contractor. *Lichtefeld–Massaro, Inc. v. United States,* 17 Cl.Ct. 67, 71 (1989) ("[FAR § 52.229–3] states that the contract price includes all applicable Federal, state, and local taxes and duties. This clause is not

ambiguous ....."); *Bannes–Shaughnessy, Inc.,* 87–2 BCA ¶ 19,884, at 100,590, 1987 WL 46589 (notwithstanding other tax provisions in solicitation, FAR § 52.229–3 "requires the inclusion of all taxes in contract bids").[4] However, the contract now before the court also included the Special Notice provision. The task before this court, then, is to determine the plain meaning of the contract taking into account both FAR § 52.229–3 and the Special Notice.

Decisional law offers a perspective in the context of similar contractual provisions. In *C.W. Over & Sons, Inc. v. United States,* 44 Fed.Cl. 18 (1999), the contract at issue contained FAR § 52.229–3, as well as a clause which stated, in pertinent part:

> Certain transactions which occur pursuant to this contract, for example, the purchase of materials or supplies, may be exempt from the imposition of state or local taxes. It is the contractor's responsibility to determine whether any transactions under the contract are exempt under the particular tax statute and to take advantage of any applicable exemptions.

*Id.* at 26. This court concluded that the only reasonable interpretation of FAR § 52.229–3 and the clause quoted above was that the responsibility for determining tax exemptions fell on the contractor.

Moreover, in *Allied Painting & Decorating Co.,* 93–3 BCA ¶ 26,218, 1993 WL 266790, the Armed Services Board of Contract Appeals addressed a solicitation that contained FAR § 52.229–3, as well as a provision that stated: "The contractor is responsible for any tax waiver applications for sales tax relief." *Id.* at 130,479. The successful contractor argued that it was misled into believing that upon applying for a waiver an exemption would be granted. The court disagreed, stating: "We are hard pressed to accept Allied's

contention since the sentence is unambiguous and does nothing more than put prospective bidders on notice ... that they are responsible for applying for tax waiver relief, if available.... Accepting Allied's interpretation ... would negate and make useless, in part, FAR clause 52.229–3." *Allied Painting,* 93–3 BCA ¶ 26,218, at 130,482–83.

The language in the instant case presents a closer case. Coupled with the provisions of the Special Notice, plaintiff points out that the Special Notice contained the hortatory instruction that offerors "should" seek out exemptions where applicable. Defendant rests on the language of FAR § 52.229–3, maintaining that the provision consistently has been interpreted to place upon the contractor the responsibility for determining whether the contract is subject to state or local taxes. Defendant explains that the Special Notice "merely provides that the successful offeror should take whatever actions are necessary to secure any tax exemption that might be available." Def.'s Br. filed Sept. 28, 2000, at 5 (citations omitted).

The court concludes that the plain meaning of the provisions, taken together, is clear. FAR § 52.229–3 required offerors to include all applicable taxes, and the Special Notice did not relieve them of this duty. The Special Notice merely put offerors on notice that exemptions might be available and that the offerors themselves remain responsible for taking actions necessary to obtain those exemptions. Given this interpretation, plaintiff must bear the consequences of its failure to follow the Solicitation's mandates.

## 2) *Latent ambiguity*

■ A contract is ambiguous where two reasonable interpretations are consistent with contract language. *See Community*

---

4. Plaintiff distinguishes *Lichtefeld–Massaro* from the instant case on the ground that "the contractor there was mistaken about the possibility of receiving a tax exemption where none was available." Pl.'s Br. filed Oct. 25, 2000, at 9. This is not a reason to restrict the holding of *Lichtefeld–Massaro* to its particular facts. That court decided that the language was unambiguous, whether or not the contractor was mistaken.

Similarly, plaintiff cannot distinguish *Bannes–Shaughnessy* on the ground that in that case

"there was no exemption available to the contractor." Pl.'s Br. filed Oct. 25, 2000, at 6 n. 5. The Veterans' Board of Contract Appeals determined that the contractor's reading of FAR § 52.229–3 and other provisions in the contract was "not reasonable." *Bannes–Shaughnessy,* 87–2 BCA ¶ 19,884, at 100,590, 1987 WL 46589. Thus, whether or not an exemption was available under the applicable state law is irrelevant.

*Heating & Plumbing,* 987 F.2d at 1579. Plaintiff, in an apparent attempt to demonstrate that the language of the provisions is ambiguous, offers its own interpretation, which it proffers is reasonable. Although the plain meaning of the Solicitation forecloses any recovery by plaintiff, the court will address plaintiff's arguments.

Plaintiff takes the position that it reasonably interpreted the Special Notice to mean that VA would designate plaintiff as purchasing agent in order to avail itself of the exemption from state and local sales and use taxes on the purchase of permanent construction materials. Plaintiff justifies its interpretation as reasonable for several reasons. First, plaintiff states that the Special Notice was intended to induce offerors to reduce their offers by account for the applicable exemptions. Plaintiff argues that the prominence of the Special Notice drew additional attention to it. The Special Notice was the first document after the Table of Contents, it was labeled "SPECIAL NOTICE," and it was printed on green paper. Second, McCarthy's interpretation of the Special Notice further demonstrates that plaintiff's interpretation was reasonable. Third, plaintiff contends that the custom in Arizona is to sign an agency agreement in order to allow general contractors to take advantage of the tax exemption available to qualifying hospitals. Finally, plaintiff does not argue that the Special Notice constituted an override of FAR § 52.229–3, but, rather, that McCarthy alerted the contracting officer that one offeror had been misled by the Special Notice and interpreted the notice to signal that the VA intended to avail itself of any applicable tax exemption.

Defendant discounts plaintiff's interpretation as unreasonable by insisting that the prominence of the Special Notice is irrelevant and the content of the Special Notice controls. More apt is defendant's argument that plaintiff's interpretation would create an irreconcilable conflict: "FAR § 52.229–3 placed the responsibility for determining whether the project was subject to state or local taxes upon the contractor while—according to plaintiff's interpretation—the Special Notice relieved the contractor of that exact same duty. . . ." Def.'s Br. filed Sept. 28, 2000, at 10.

A cardinal rule of contract interpretation is that "an interpretation which gives a *reasonable meaning to all parts of an instrument* will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, or superfluous . . . ." *Hol–Gar Mfg. Corp. v. United States,* 169 Ct.Cl. 384, 395, 351 F.2d 972, 979 (1965). Plaintiff's proffered reconciliation of the two clauses does not meet this standard. Plaintiff has not shown how its interpretation reasonably could account for the existence of FAR § 52.229–3. To read the Special Notice as relieving the contractor of the responsibility to inquire, at the very least,[5] whether an exemption exists and whether the VA would cooperate in obtaining the exemption would render FAR § 52.229–3 inoperative. Such a void in plaintiff's interpretation is sufficient to render it unreasonable on its face.

### 3) *Patent ambiguity*

If an ambiguity were present, the court would next determine whether it was patent or latent. "A patent ambiguity is considered so obvious as to raise the duty to inquire, whereas a latent ambiguity is not glaring or substantial." *Bristol–Myers Squibb, Co. v. United States,* 48 Fed.Cl. 350, 355 n. 12 (2000) (citing *Grumman Data Sys. Corp. v. Dalton,* 88 F.3d 990, 997 (Fed.Cir. 1996)). If an ambiguity is latent, the court applies the principle of *contra proferentem,* and the contractual provision is construed against the Government as drafter. *See Dureiko v. United States,* 209 F.3d 1345, 1357 (Fed.Cir.2000); *Cray Research, Inc. v. United States,* 44 Fed.Cl. 327, 330 (1999). If an ambiguity is patent, plaintiff would be foreclosed from recovery, *PCA Health Plans of Texas, Inc. v. LaChance,* 191 F.3d 1353, 1355 (Fed.Cir.1999), unless the Government had notice of the patent ambiguity. *See Price/CIRI Constr., J.V.,* 89–3 BCA ¶ 22,059, at 110,975–77; *Peter Kiewit Sons' Co.,* 74–2 BCA ¶ 10,975, at 52,230, 1974 WL 1615; *see*

---

5. It is undisputed that neither plaintiff nor any other offeror asked any questions with regard to exemptions from state or local taxes at the prebid conference.

*also WPC Enterprises, Inc. v. United States,* 163 Ct.Cl. 1, 10–11, 323 F.2d 874, 879 (1964). Assuming that the provisions were ambiguous, plaintiff would have been confronted with a patent ambiguity, which obligated it to notify the contracting officer, and the contracting officer would be charged with a duty to notify all offerors of a change or clarification in the contract. *Triax Pac., Inc. v. West,* 130 F.3d 1469, 1474 (Fed.Cir.1997); *Nielsen–Dillingham Builders, J.V. v. United States,* 43 Fed.Cl. 5, 10–11 (1999).

Plaintiff submits that McCarthy's first offer and BAFO effectuated the required notice. McCarthy submitted a BAFO instructing the VA to either sign an agency agreement that would allow McCarthy to obtain a sales tax exemption on permanent materials or add those sales taxes back into McCarthy's offer. The VA added the taxes back in and evaluated McCarthy's offer accordingly.

Plaintiff points to McCarthy's offer as evidence that "[t]he Contracting Officer was on notice that another offeror interpreted the Special Notice as [plaintiff] did, and therefore, had an affirmative duty to notify all offerors of his intentions concerning exemption from state and local sales and use taxes." Pl.'s Br. filed Aug. 3, 2000, at 23. This argument fails for several reasons.

First, McCarthy did not interpret the Special Notice as plaintiff did. Second, the communication from McCarthy to the VA did not put the VA on notice of any ambiguity; rather, it merely conveyed McCarthy's interpretation of the Special Notice. Consistent with acknowledging that the contractor was responsible for state taxes, McCarthy requested that the Government sign the agency agreement and thereby allow McCarthy to obtain the exemption as agent of the VA. Perhaps more important, plaintiff can only recover if it can show that McCarthy's action put the VA on notice of a patent ambiguity. *See Price/CIRI Constr.,* 89–3 BCA ¶ 22,059, at 110,975–77; *Peter Kiewit Sons',* 74–2 BCA ¶ 10,975, at 52,230, 1974 WL 1615; *see also WPC Enterprises,* 163 Ct.Cl. at 10–11, 323 F.2d at 879. While plaintiff relies on *Peter Kiewit* and *Price/CIRI* to advance its argument that the contracting officer was on no-

tice of a patent ambiguity, this argument is unavailing. Because the court has ruled that the Solicitation was not ambiguous, these cases are inapposite.

### 2. *Reformation*

█ Plaintiff argues that the contracting officer had constructive knowledge of a pricing mistake in plaintiff's offer and that plaintiff therefore is entitled to reformation. To succeed in this argument, plaintiff must show (1) that the contracting officer knew, or should have known, that the contractor submitted a mistaken offer; and (2) that the error is compensable, *i.e.,* a "clear cut clerical or arithmetical error, or misreading of the specification." *Bromley Contracting Co., Inc. v. United States,* 794 F.2d 669, 672 (Fed.Cir.1986) ("Complete omission of a cost item from the bid calculation may be such a mistake, but no contractor can recover for an error in judgment.") (internal quotation and footnotes omitted); *see also Giesler v. United States,* 232 F.3d 864, 870–71 (Fed.Cir.2000).

Plaintiff has not demonstrated that the contracting officer knew or should have known of the mistake in its offer. Plaintiff's only evidence of actual knowledge comes by way of McCarthy's offer, which did not provide the contracting officer any insight into how plaintiff's offer was calculated. McCarthy's offer does not disclose plaintiff's (or any other offeror's) pricing methodology. Plaintiff also fails to offer sufficient evidence of constructive knowledge on the part of the contracting officer that another offeror may have construed the provision as McCarthy did. All of the offers were below the VA's estimate, a mere 4.8% separated plaintiff's offer and the next highest offer, and plaintiff's offer was only 12.9% lower than the highest offer, McCarthy's. This minimal disparity in the offers is insufficient to establish constructive notice. *See Allied Contractors, Inc. v. United States,* 159 Ct.Cl. 548, 550, 310 F.2d 945, 947 (1962) (discrepancy in price for one line item of contract did not put contracting officer on notice of mistake in bid); *see also Aydin Corp. v. United States,* 229 Ct.Cl. 309, 316–22, 669 F.2d 681, 686–87 (1982) (disparity in bids must be examined in light of all circumstances). Indeed, by qualifying its of-

fer, McCarthy manifested an understanding that the contractor was responsible for state taxes. McCarthy's BAFO acknowledged that the VA may be unwilling to sign an agency agreement with the state.

### 3. *Implied duty of cooperation*

■ The Government has an implied duty to cooperate with its contractors. *Information Sys. & Networks Corp. v. United States*, 34 Fed.Cl. 457, 460 (1995).[6] Plaintiff's final argument is that the VA breached its implied duty of cooperation by failing to sign the agency agreement that would have allowed plaintiff to obtain the tax exemption. To succeed on this claim, plaintiff must prove that the VA acted unreasonably in deciding that it would not execute an agency agreement with plaintiff. *See Essex Electro Eng'rs, Inc. v. Danzig*, 224 F.3d 1283, 1291 (Fed.Cir.2000). The contract itself, under section 1.23(h), stated the Government would "furnish evidence appropriate to establish exemption from any Federal, State, or local tax when the Contractor requests such evidence and a reasonable basis exists to sustain the exemption." Thus, the inquiry becomes whether the VA acted reasonably by refusing to sign the agency agreement.

■ The VA did not act unreasonably when it refused to sign the agency agreement. The contracting officer carefully considered plaintiff's request and provided a reasonable explanation for not entering into the agreement. In particular, Contracting Officer Sullivan, in his letter of April 9, 1997, denied plaintiff's request because it was "not in the interest of the Government," explaining:

> Federal Acquisition Regulation (FAR) Subpart 29.303(a) states "Prime contractors and subcontractors shall not normally be designated as agents of the Government for purposes of claiming immunity from State or local sales or use taxes...". Although you have presented legal issues which have bearing within the State of

Arizona, you have not presented any federal agency that has allowed the use of the Agency Purchase program.

> ... [A] material purchase agreement would cause a significant change in the relationship between the Government and your firm.... We cannot accept the added obligation to our contract administration nor allow third party relationships with your subcontractors....

Because this letter presents the VA's legitimate concerns about entering into plaintiff's proposed agreement, the contracting officer behaved reasonably under the circumstances and provided adequate justification for his actions. Plaintiff argues that it provided adequate safeguarding of the VA's interests under the agency agreement, such that the VA would be protected from liability, but that is not the proper inquiry. Regardless of plaintiff's assurances, the VA had a reasonable basis for refusing plaintiff's proposed agreement.

The result of plaintiff's lawsuit is dictated by established tenets of contract interpretation. Nonetheless, the court shares plaintiff's frustration with the prominence placed by the Solicitation on the Special Notice. If a continuum exists by which plain meaning can evolve into ambiguity, this case can be positioned right before the line of demarcation. At some point the Government has to bear the responsibility for cobbling together a myriad of mandatory contract provisions in a solicitation. For a contractor to expect that the same subject matter be addressed under one section is reasonable. The problem in this case is that plaintiff's interpretation could not reconcile the two contract provisions.

### CONCLUSION

Accordingly, based on the foregoing,

1. Plaintiff's motion for summary judgment is denied, and defendant's cross-motion for summary judgment is granted. The

---

**6.** Plaintiff's quotation to *Lewis–Nicholson, Inc. v. United States*, 213 Ct.Cl. 192, 204, 550 F.2d 26, 32 (1977), for the proposition that the Government "must do whatever is necessary to enable the contractor to perform" is disingenuous. Even *Lewis–Nicholson* recognized a breach only where the Government "unreasonably interfere[d] with or delay[ed]" the contractor's performance. *Id.*

**464**

Clerk of the Court shall enter judgment for defendant.

2. By January 31, 2001, the parties shall file requests for deletion of protected/privileged material before the court issues its opinion for publication.

**IT IS SO ORDERED.**

No costs.