# United States Court of Appeals for the Federal Circuit

---

**JENNIFER LANCLOS,**

*Plaintiff-Appellant*

**v.**

**UNITED STATES,**

*Defendant-Appellee*

---

2021-1750

---

Appeal from the United States Court of Federal Claims in No. 1:15-cv-00358-PEC, Judge Patricia E. Campbell-Smith.

---

Decided: July 15, 2022

---

JEFFREY DAHL, Law Office of Jeffrey Dahl, San Antonio, TX, argued for plaintiff-appellant.

RICHARD PAUL SCHROEDER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, DEBORAH ANN BYNUM, MARTIN F. HOCKEY, JR.

---

Before MOORE, *Chief Judge*, REYNA and CHEN, *Circuit Judges*.

REYNA, *Circuit Judge*.

Appellant Jennifer Lanclos appeals the decision of the Court of Federal Claims interpreting a settlement agreement between Ms. Lanclos and the U.S. Government. The Court of Federal Claims initially determined that the Government is liable for a shortfall in the settlement amounts received by Ms. Lanclos. The shortfall resulted when the insurance company contracted by the Government to provide monthly payments to Ms. Lanclos encountered financial difficulties and reduced the payments by a significant amount. The Government moved for reconsideration, arguing that a decision by this court involving similar circumstances constituted an intervening change in the controlling law that required the Court of Federal Claims to reach a different result. The Court of Federal Claims agreed and upon reconsideration decided that the Government is not liable for the shortfall because its liability ended once it purchased the annuity. We reverse the Court of Federal Claims' decision and remand for further proceedings.

## BACKGROUND

Jennifer Lanclos was born in 1982 at the United States Air Force Medical Center at Keesler Air Force Base in Mississippi. *Lanclos v. United States*, 133 Fed. Cl. 113, 114 (2017) (*"Lanclos I"*). During childbirth, she was seriously injured and as a result, Ms. Lanclos suffers from Athetoid cerebral palsy. *Id.* Athetoid cerebral palsy is a nonprogressive motor dysfunction syndrome characterized by a severe lack of voluntary muscle control. *See generally* Hart deCoudres Peterson, *Cerebral Palsy*, ACCESSSCIENCE, MCGRAW-HILL EDUCATION (Sept. 2019), https://www.access science.com/content/cerebral-palsy/121500.

Ms. Lanclos's parents filed a medical malpractice lawsuit on behalf of their daughter against the United States Air Force (the "Government"). In 1986, the parties entered into a settlement agreement. *Lanclos I*, 133 Fed. Cl.

at 114. Generally, the parties agreed that the Government would make certain lump sum payments to the parents of Ms. Lanclos and their attorney, and that Ms. Lanclos would receive a single lump sum payment followed by specific monthly payments over 30 years, or for the remainder of her life, whichever was longer. J.A. 18–19. The parties agreed that the Government would purchase an annuity policy from an insurance company that would provide the monthly amounts expressly listed in the settlement agreement. *Id.* In consideration for the monetary settlement amounts, the Lanclos Family[1] agreed to terminate the lawsuit and release the Government from all liability related to Ms. Lanclos's injury. *Id.* The terms of the release are as follows:

> In consideration hereof, we hereby release and forever discharge the United States, its officers, agents and employees from all liability, claims and demands of whatsoever nature arising from the said incident.

J.A. 19. The parties executed the settlement agreement, the Government made the various lump sum payments, and the medical malpractice suit against the Government was terminated.[2] *Lanclos I*, 133 Fed. Cl. at 115. The

---

[1] References to the "Lancloses" and "Lanclos Family" recognize the involvement of their attorney in the settlement agreement.

[2] Relevant provisions of the agreement are as follows:

> We, PATRICK A. LANCLOS, LINDA LANCLOS, both individually and on behalf of our daughter, JENNIFER E. LANCLOS, and JENNIFER E. LANCLOS, by her parents and natural guardians, hereby agree to accept:
>
> 1) For Jennifer Lanclos –

Government selected Executive Life Insurance Company of New York ("Executive Life Insurance") to provide the monthly annuity payments set out in the settlement agreement. *Lanclos I*, 133 Fed. Cl. at 114. Executive Life Insurance, however, encountered financial difficulties. *Id.* at 115. In August 2013, Executive Life Insurance reduced the amount of the monthly payments by approximately 42% of the amounts listed in the settlement agreement. *Id.* Ms. Lanclos estimates that the reduction in monthly

---

- $200,000.00 lump sum

- The purchase of an annuity which will provide the following:

  $1,500.00 per month — from commencement of payment for a period of 5 years

  $2,000.00 per month — years 6–10

  $2,500.00 per month — years 11–15

  $3,000.00 per month — years 16–20

  $3,500.00 per month — years 21–25

  $4,000.00 per month — years 26–30

  $4,500.00 per month — years 31–life

  All monthly payments above are guaranteed for 30 years or the life of Jennifer, whichever is longer.

J.A. 18.

payments will result in a shortfall of $731,288.81 less than the amount called for in the settlement agreement. *Id.*

In 2015, Ms. Lanclos filed a lawsuit against the Government in the Court of Federal Claims alleging breach of the settlement agreement. *Id.* at 116. In her complaint, Ms. Lanclos asserted that the settlement agreement "unambiguously obligates defendant [Government] to ensure" full payment of the annuity payments. *Id.* The parties filed cross motions for partial summary judgment. On July 12, 2017, the Court of Federal Claims granted Ms. Lanclos's motion, finding the Government liable for the shortfall in the payments. *Id.* at 119.

On May 21, 2020, the Government filed an amended motion for reconsideration, primarily arguing that the resolution of *Shaw v. United States*, 900 F.3d 1379 (Fed. Cir. 2018), in favor of the government constituted an intervening change in the controlling law that warranted reconsideration. *Lanclos v. United States*, 151 Fed. Cl. 692, 694 (2021) ("*Lanclos II*"). On January 7, 2021, the Court of Federal Claims granted the Government's motion for reconsideration. *Id.* at 694–95.

On reconsideration, the Court of Federal Claims granted the Government's motion for partial summary judgment, concluding that *Shaw* controlled the disposition of Ms. Lanclos's suit. *Id.* at 696. The Court of Federal Claims reasoned that there was no "material difference between the language in [Ms. Lanclos's] agreement and the language in the *Shaw* agreement." *Id.* The Court of Federal Claims explained that the "guarantee" language in the Lanclos agreement applies to the scheduled monthly structure of the payments but not the actual payment of the listed amounts. *Id.* On that basis, the Court of Federal Claims concluded the Government was not liable for the shortfall in the annuity payments and, on January 7, 2021, entered judgment in favor of the Government. *Id.*

Ms. Lanclos timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## STANDARD OF REVIEW

This court reviews summary judgment decisions of the Court of Federal Claims and its contract interpretations de novo. *Shaw*, 900 F.3d at 1381. "Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Langkamp v. United States*, 943 F.3d 1346, 1349 (Fed. Cir. 2019) (quoting *First Com. Corp. v. United States*, 335 F.3d 1373, 1379 (Fed. Cir. 2003)).

## DISCUSSION

The question before us is whether the Government bears any liability for the shortfall in the payments provided to Ms. Lanclos under the terms of the settlement agreement. We hold that under the correct interpretation of the terms of the settlement agreement, the Government is liable for the entirety of the shortfall amount.

## I.

We begin our review with an interpretation of the express terms and plain meaning of the settlement agreement. *C. Sanchez & Son, Inc. v. United States*, 6 F.3d 1539, 1543 (Fed. Cir. 1993) ("A contract is read in accordance with its express terms and the plain meaning thereof."). We give the terms of an agreement their ordinary meaning unless "the parties mutually intended and agreed to an alternative meaning." *Harris v. Dep't of Veterans Affs.*, 142 F.3d 1463, 1467 (Fed. Cir. 1998). Finally, we interpret terms in an agreement "in a manner that gives meaning to all of its provisions and makes sense." *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996). On these bases, we first examine the plain and ordinary meaning of the express terms in the agreement, in particular the term "guarantee" as used in the Lanclos agreement.

First, we discern no reason why the term "guarantee" should not be given its plain and ordinary meaning. The plain meaning of the term "guarantee" is to give an "assurance that a contract or legal act will be duly carried out." *Guarantee*, Black's Law Dictionary (11th ed. 2019). The term can also reference obligations assumed between parties, such as where one party agrees to answer for a debt or default. *Id.*

The Lanclos agreement provides that "[a]ll monthly payments above are guaranteed for 30 years or the life of Jennifer, whichever is longer." J.A. 18. Applying its plain meaning, we conclude that the term "guarantee" as expressed in the agreement applies to "all monthly payments." The payments themselves are guaranteed, not solely the schedule over which they are set to occur. The term "guaranteed" indicates an assurance that the payments will be made. It is a formal pledge to answer for a debt or default. In this case, the Government pledged that Ms. Lanclos would receive certain amounts, and it guaranteed those amounts even in the case of another person's default—here, Executive Life Insurance.

The Government argues that we should conclude that Executive Life Insurance, not it, made the guarantee. We are not persuaded. We find no reasonable basis to conclude that the guarantee pledged in the agreement was not made by the Government. There are only two parties to the Lanclos agreement: the Lancloses and the Government. No other person or entity is referenced or mentioned in the agreement, including Executive Life Insurance. It would be absurd to conclude that the Lanclos Family guaranteed to pay itself the monthly payments. Rather, the agreement clearly indicates that the Government guaranteed to provide the listed amounts in accordance with the temporal schedule for 30 years, or the remainder of Ms. Lanclos's life, whichever is longer. We conclude that under the ordinary meaning of the term "guarantee" the Government

agreed to assure fulfillment of the listed monthly payments owed to Ms. Lanclos.

Second, we see no reasonable basis to conclude that the parties sought to define "guarantee" or to give the term an alternative meaning. *See King v. Dep't of Navy*, 130 F.3d 1031, 1033 (Fed. Cir. 1997) ("The paramount focus is the intention of the parties at the time of contracting; that intention controls in any subsequent dispute.").

Third, our interpretation of the meaning of the term "guarantee" is consistent and in harmony with the agreement as a whole. For example, the agreement provides that the Lancloses agreed that "[i]n consideration hereof, we hereby release and forever discharge the United States . . . from all liability." J.A. 19. The phrase "[i]n consideration hereof" indicates an exchange of promises, in particular a contractual exchange. The Lanclos Family agreed to release the Government from all future liability in exchange for the totality of promises made by the Government. This includes the assurance that the Lancloses would be provided with (1) annuity payments in specific amounts (2) paid in accordance with a monthly schedule. It does not "make sense" that the Government's promise or obligation extends only to the monthly schedule and not the payments, as the Government claims. We refuse to rewrite the agreement to make the schedule the sole consideration of the settlement agreement. We also refuse to place the obligation for the monthly payments on an entity that is not a party to the agreement, or even mentioned in the agreement. Ms. Lanclos suffered a debilitating, lifelong injury, allegedly at the hands of the Government. When read as a whole, it is unreasonable to interpret the agreement to mean that Ms. Lanclos terminated the lawsuit and forever released and discharged the Government from any liability in consideration for a mere schedule.

## II.

This appeal is the fourth in a series of appeals that have come before this court involving similar circumstances.[3] All four cases involve a lawsuit against the government that was terminated under the terms of a settlement agreement providing that the plaintiffs would receive a sum certain paid in monthly payments. In each case, the government purchased an annuity policy from an insurance company to provide monthly payments. In each case, the payments either stopped or their amounts were reduced when the insurance company encountered financial difficulties. What distinguishes the four cases are the express terms set out in the respective settlement agreements underlying each case. We address each case in turn.

In *Massie*, we held the government responsible for guaranteeing the annuity payments. We explained "[t]he language specifying that the annuity 'will result in distributions' and that the disbursements 'shall be paid' is unambiguously mandatory . . . that the Massies must receive the payments." *Massie*, 166 F.3d at 1190. We reasoned that the terms of the agreement made the payments mandatory, and that the government was responsible for the payments because "no one else is a party to the Agreement." *Id.* The same reasoning applies here.

The Lanclos agreement unambiguously provides that the Government was obligated to obtain an annuity "which will provide" the listed payments. J.A. 18. As in *Massie*, the Lanclos agreement's terms are unambiguously mandatory. In exchange for a complete release, the Government promised to provide sum certain that would be paid

---

[3]    Massie v. United States, 166 F.3d 1184 (Fed. Cir. 1999); Nutt v. United States, 837 F.3d 1292 (Fed. Cir. 2016); Shaw, 900 F.3d 1379; Lanclos I, 133 Fed. Cl. 113; Lanclos II, 151 Fed. Cl. 692.

pursuant to a monthly timetable.  Further, as in *Massie*, the only parties to the agreement are the Lancloses and the Government.  The insurance company is not identified in any manner in the *Massie* agreement or the Lanclos agreement.  Appellant's Br. 14–15.  As in *Massie*, here, the Government is liable for the payments.

In *Nutt*, we held that the government was not liable for the annuity payments.  But the *Nutt* agreement is substantively dissimilar to the Lanclos agreement.  The *Nutt* agreement included a provision purporting to grant plaintiffs standing to sue the insurance company in the event of default, and a promise that the government would assist in such a suit.  *Nutt*, 837 F.3d at 1296–97.  We distinguished *Nutt* from *Massie* on the basis that the *Nutt* agreement clearly did not obligate the government as guarantor of the monetary payments.  The *Nutt* agreement did not contain similar mandatory language to the *Massie* agreement.  Additionally, unlike the *Massie* and Lanclos agreements, the *Nutt* agreement referenced and expressly contemplated a third party—the insurance company.  The *Nutt* agreement expressly provided that the insurance company was responsible for the payments and purportedly provided the right to sue the insurance company in case of default with assistance from the government.  The agreement stated: "[I]f the insurance company hereinafter referred to defaults in the performance of its obligations under the annuity agreement with the United States, [the Nutt family] . . . shall have standing to sue the said insurance company for breach of contract.  In such event, the United States shall assist."  *Id.* at 1297.  These terms unambiguously made the insurance company the guarantor.

Here, the Lanclos agreement does not identify Executive Life Insurance as a party.  Nor is there a shift of liability from the Government by purportedly creating standing for the Lancloses to sue the insurance company in the event of default.  Nor does the Lanclos agreement contain a promise by the Government to assist in any suit against the

insurance company. Given these dissimilarities between the *Nutt* agreement and the Lanclos agreement, we conclude that *Nutt* is inapplicable to this action.

In *Shaw*, we determined the government was not liable for the annuity payments. The *Shaw* court interpreted the term "guaranteed" as a term of art to mean that the payments would continue for a certain amount of time, or until the death of the annuitant. *Shaw*, 900 F.3d at 1383–84. The intent to limit the meaning of "guarantee" was clear in the *Shaw* agreement. The *Shaw* agreement provided a detailed description for "guarantee" that identified it as a term of art within the context of the agreement. *Id.* at 1383. The agreement stated:

> To [plaintiff], the sum of $4,166.00 each month, continuing for the life of [plaintiff]. These monthly payments are guaranteed for a period of twenty (20) years; thus, should [plaintiff] die before the 240th payment, then the payments set forth herein shall be paid, as they become due, to his estate through and including the 240th payment. Should [plaintiff] die after the 240th payment, the payments set forth herein shall ceases [sic].

*Id.* The second and third sentences above explained how the guarantee would function and these sentences limited the meaning of guarantee to the period of time. This made "guarantee" a term of art in the *Shaw* agreement and gave it a meaning other than its plain and ordinary meaning. As noted above, the Lanclos agreement does not indicate that the term "guarantee" has a meaning beyond its plain and ordinary meaning. "Guarantee" is not used as a term of art in the Lanclos agreement as it was in the *Shaw* agreement.

The release language in the *Shaw* agreement was also narrower than the terms of the Lanclos release. The *Shaw* agreement stated, in relevant part, "[T]he [government's] purchase of annuities which will . . . provide certain future

periodic payments as set forth below in paragraph 6 shall constitute a complete release . . . ."[4]    *Shaw*, 900 F.3d at 1381.  This meant that the government's purchase of annuities would trigger a complete release from future liability.  The Lanclos agreement contains no similar release language.

The *Shaw* agreement further expressly provided that the government would purchase the annuities from Merrill Lynch Settlement Services.  *Id.* at 1381.  As such, Merrill Lynch was specifically identified within the agreement as the party responsible for providing the annuity payments.  But the Lanclos agreement does not reference any insurance company.  Rather, the Government here bears sole responsibility for identifying and selecting the insurance company that it would use to facilitate the payments.  Because no third party was identified as responsible for making the payments, the Government remains responsible for the annuity payments to Ms. Lanclos in the event of default.

Based on the foregoing, we conclude that the terms of the *Nutt* and *Shaw* agreements are materially different than the Lanclos agreement.  We hold that when read as a whole, the ordinary meaning of the unambiguous terms of the settlement agreement establishes that the Government pledged to guarantee payment of the settlement amounts in consideration of the complete release from all liability related to the injuries Jennifer Lanclos sustained during delivery.  As such, the Government is liable for the shortfall in payments provided to Ms. Lanclos.

---

[4]    The release in *Shaw* absolves the government of all liability after the government's payment of various sums to the Shaws and their attorneys, and after the purchase of annuities.

CONCLUSION

We reverse the judgment of the Court of Federal Claims and hold that the Government is responsible for the shortfall in the annuity payments. We remand to the Court of Federal Claims to determine the amount of that shortfall.

**REVERSED AND REMANDED**

COSTS

Costs to Appellant.