ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of - | ) |
| | ) |
| Delfasco LLC | ) ASBCA Nos. 63280, 63402 |
| | ) |
| Under Contract No. W52P1J-16-D-0039 | ) |

APPEARANCE FOR THE APPELLANT:        David S. Cohen, Esq.
                                     Cordatis LLP
                                     Arlington, VA

APPEARANCES FOR THE GOVERNMENT:      Scott N. Flesch, Esq.
                                      Army Chief Trial Attorney
                                     MAJ Ronald C. Walton, JA
                                     MAJ Jason C. Coffey, JA
                                     Michael McDermott, Esq.
                                      Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE MELNICK
ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

This consolidated appeal is about a contract for practice munitions. It contained an economic price adjustment (EPA) clause that provided for a price adjustment based upon fluctuations in the price of steel. Appellant, Delfasco, LLC (Delfasco), seeks an adjustment due to increases in its price for bomb bodies made of gray iron, which it contends is steel. The government moves for summary judgment. The plain meaning of steel does not encompass gray iron. Additionally, Delfasco has neither met the standard to consider any purported contrary evidence of trade practice, nor made a showing that trade practice equates steel with gray iron. Accordingly, the government's motion is granted.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

On January 7, 2016, the government awarded to Delfasco the firm-fixed price, indefinite delivery/indefinite quantity contract identified above. Among the items for delivery were two different models of practice bombs, the MK-76 MOD No. 5, and the BDU-33 D/B. (R4, tab 2; gov't mot., proposed findings of fact [GPFF] ¶ 1; app. opp'n, statement of genuine issues [AGI] ¶ 1) The contract contained an EPA clause applicable only to the price of steel. Upon Delfasco providing a required notification of change in its steel price the parties were to negotiate an adjustment of the contract's line-item unit prices. It expressly prohibited adjustments based on price changes for

material other than steel.  There were other specific requirements and limitations not relevant to this decision.  (R4, tab 2 at 42-44)[1]

On March 16, 2016, Delfasco obtained a price quote from Brillion Iron Works for casting what it referred to as Part 2193777, described as a bomb body and elsewhere associated with the MK-76 MOD 5 (R4, tabs 66, 208 at 1301; GPFF ¶¶ 18-19; AGI ¶ 18).  The material from which the bomb body was cast was gray iron, ASTM Class 20 (R4, tabs 66, 208 at 1301; GPFF ¶¶ 18-19, 21; AGI ¶¶ 18-20).  This is confirmed by the bomb body drawings, which state the MK-76 MOD No. 5 material is "Iron casting, gray in accordance with ASTM A48 Class 20" (R4, tab 208 at 1301).  Brillion initially quoted $11.57 per casting, which included a material surcharge based upon a rate that would adjust every month (R4, tab 66).  The body of the other practice bomb, BDU-33 D/B, was also cast from gray iron, or more specifically, iron castings, gray per ASTM A48/A48M-00 Class 20S (R4, tab 220; GPFF ¶ 32; AGI ¶ 32).  After subtracting 22 cents in packaging charges, Delfasco used the remaining $11.35 of the Brillion quote to establish the base or benchmark price for both bomb body castings (GPFF ¶¶ 16, 32; AGI ¶¶ 8, 16, 32).

On February 3, 2022, Delfasco submitted a certified claim under the EPA clause for the escalation of the cost of steel above the base in the two practice bombs. Citing an attached spreadsheet purporting to show increases in foundry bomb body invoices, Delfasco sought $1,458,490.57.  (R4, tab 43; *see also* AGI ¶ 23)  After the contracting officer denied the claim on February 15 as inconsistent with various terms of the EPA clause, and the parties discussed the matter by phone on February 25, Delfasco revised its certified claim on April 26.  It addressed the contracting officer's comments and increased the amount sought to $1,635,650 due to the discovery of evidence for additional castings.  (R4, tabs 47, 54 at 712-19, tab 70 at 792-96)  On May 13, 2022, Delfasco appealed the contracting officer's February 15 decision, which was docketed as ASBCA No. 63280.  By final decision dated July 7, 2022, the contracting officer denied the revised claim, in sum due to a lack of supporting information and failure to comply with the EPA clause's notice requirements (R4, tab 70 at 792-96).  Delfasco appealed that decision on September 2, 2022, which the Board docketed as ASBCA No. 63402.  The appeals were consolidated on September 13, 2022.  The consolidated appeal stems from claims that only concern the bomb body castings (GPFF ¶¶ 22-23; AGI ¶¶ 22-23).

---

[1] The government numbered its pages in its Rule 4 submission with leading zeros, which we omit here.

DECISION

"[S]ummary judgment should be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Goodloe Marine, Inc.*, ASBCA Nos. 62106, 62446, 22-1 BCA ¶ 38,053 at 184,774 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "A non-movant seeking to defeat the suggestion that there are no genuine issues of material fact may not rest upon its pleadings, but 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The government advances multiple arguments in support of summary judgment but we focus only upon the first, summarized by the government as follows: "Since (1) the bomb bodies are made of iron, (2) the EPA clause only applies to steel, and (3) [Delfasco's] claim is based on the costs it incurred in making the bomb bodies, [Delfasco] cannot rely on the steel EPA clause" as a basis for recovery (gov't mot. at 18). Delfasco responds that the contract does not define steel, and contends the gray iron contained in the bomb bodies is steel. Because steel is undefined it argues the meaning of the contract is in dispute and we must deny summary judgment and proceed to a hearing of extrinsic evidence to determine the word's meaning. Its primary purported evidence includes citation to industry websites purporting to define steel and gray iron. It also relies upon the absence of any denials by the contracting officer's decisions that the bomb bodies were steel.

Determining the meaning of a contract starts with its language. *TEG-Paradigm Env't, Inc. v. United States*, 465 F.3d 1329, 1338 (Fed. Cir. 2006) (citing *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1038 (Fed. Cir. 2003) (en banc)). "When the contract's language is unambiguous it must be given its 'plain and ordinary' meaning and the [Board] may not look to extrinsic evidence to interpret its provisions." *Id.* "Construction of the language of the contract to determine whether there is an ambiguity is a question of law. . . ." *Gardiner Kamya & Assocs. v. Jackson*, 467 F.3d 1348, 1353 (Fed. Cir. 2006). Extrinsic evidence cannot be used to create an ambiguity where none otherwise exists. *Interwest Constr. v. Brown*, 29 F.3d 611, 615 (Fed. Cir. 1994). Contract terms are ambiguous when, read as a whole, they are susceptible to more than one reasonable interpretation. *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1434-35 (Fed. Cir. 1996).

The EPA clause unambiguously limits its application to "the price for STEEL only" (R4, tab 2 at 42). Our task is to determine the meaning of the word steel and whether it includes the gray iron used to make the bomb bodies. There is no indication in the contract that the parties contemplated steel or gray iron to depart from their plain and ordinary meanings. *See Lanclos v. United States*, 40 F.4th 1352, 1356 (Fed. Cir. 2022) ("see[ing] no reasonable basis to conclude that the parties sought to define

3

'guarantee' or to give the term an alternative meaning"). Accordingly, it is appropriate to consult their definitions. *Id.* at 1355. Steel's ordinary definition is "commercial iron that contains carbon in any amount up to about 1.7 percent as an essential alloying constituent, is malleable when under suitable conditions, *and is distinguished from cast iron by its malleability and lower carbon content.*" MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/steel (last visited Aug. 18, 2023) (emphasis added). Another is "any of various modified forms of iron, artificially produced, *having a carbon content less than that of pig iron. . . .*" DICTIONARY.COM, https://www.dictionary.com/browse/steel (last visited Aug. 18, 2023) (emphasis added).[2] Gray iron is defined separately as "*pig or cast iron* containing much graphitic carbon which causes its fracture to be dark gray." MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/gray%20iron (last visited Aug. 18, 2023) (emphasis added). One more similarly says it is "*pig iron or cast iron* having much of its carbon in the form of graphite and exhibiting a gray fracture." DICTIONARY.COM, https://www.dictionary.com/browse/gray-iron (last visited Aug. 18, 2023) (emphasis added). The definitions distinguish steel from cast or pig iron, which form gray iron, dictating they are not the same. Given the clarity of both the language of the EPA clause limiting its scope to steel, as well as the definitions of steel and gray iron, the clause cannot reasonably be read to encompass gray iron.

Delfasco cites several Board decisions entertaining extrinsic evidence (app. opp'n at 12-18). Contrary to this matter, those cases required more development of the record to ascertain the meaning of the contracts or to resolve additional issues.[3] Here, the EPA clause is clearly limited to steel. Steel is readily defined and is not gray iron.

---

[2] Still another is "[a] generally hard, strong, durable, malleable alloy of iron and carbon, usually containing between 0.2 and 1.5 percent carbon, often with other constituents. . . ." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, https://www.ahdictionary.com/word/search.html?q=steel (last visited Aug. 18, 2023).

[3] *See Maersk Line, Ltd.*, ASBCA Nos. 59791, 59792, 16-1 BCA ¶ 36,405 (permitting extrinsic evidence to resolve "broader issues in these appeals"); *Hanley Indus., Inc.*, ASBCA No. 58198, 16-1 BCA ¶ 36,244 (denying summary judgment because the contract was not clear); *DynCorp Int'l LLC*, ASBCA No. 59244, 15-1 BCA ¶ 36,084 (finding review of extrinsic evidence necessary to discern the parties' contractual intent); *Raytheon Co.*, ASBCA No. 58212, 15-1 BCA ¶ 35,999 (requiring a hearing into the reasonableness of party interpretations); *United Launch Servs., LLC*, ASBCA No. 56850 *et al.*, 14-1 BCA ¶ 35,511 (concluding the key contract term was unclear and genuine issues existed regarding its meaning); *Trace Sys., Inc.*, ASBCA No. 57574, 11-2 BCA ¶ 34,861 (finding the contract ambiguous); *L-3 Servs., Inc.*, ASBCA Nos. 56304, 56335, 09-2 BCA ¶ 34,156 (requiring a better record to determine the reasonableness of the parties' interpretations); *AshBritt, Inc.*, ASBCA Nos. 56145, 56250, 09-2

Nevertheless, "[e]ven when a contract is unambiguous, it may be appropriate to turn to one common form of extrinsic evidence—evidence of trade practice and custom." *TEG-Paradigm,*, 465 F.3d at 1338 (citing *Hunt Constr. Grp., Inc. v. United States*, 281 F.3d 1369, 1373 (Fed. Cir. 2002)). Such evidence "may be useful in interpreting a contract term having an accepted industry meaning different from its ordinary meaning—even where the contract otherwise appears unambiguous." *Id.* (quoting *Hunt Constr.*, 281 F.3d at 1373); *see also CiyaSoft Corp.*, ASBCA No. 59913, 22-1 BCA ¶ 38,145 at 185,275-76 (denying summary judgment given a showing of a conflicting industry interpretation of a contract term). Delfasco's proffered extrinsic evidence might be characterized as evidence of trade practice. However, we "should accept evidence of trade practice only where a party makes a showing that it relied reasonably on a competing interpretation of the words when it entered the contract." *Metric Constructors, Inc. v. NASA*, 169 F.3d 747, 752 (Fed. Cir. 1999). "This requirement helps ensure that the evidence of trade practice and custom truly reflects the intent of the contracting party, and avoids according undue weight to that party's purely *post hoc* explanations of its conduct." *Id.*; *see also Advanced Eng'g & Plan. Corp.*, ASBCA Nos. 53366, 54044, 05-1 BCA ¶ 32,806 at 162,317 (rejecting consideration of trade practice when not relied upon by the contractor).

Delfasco's brief proclaims that "[i]t was always Delfasco's understanding and intent that the term 'STEEL,' as used in the EPA clause, encompassed the bomb body castings Delfasco purchased for this Contract" (app. opp'n at 13-14). However, that statement is purely the advocacy of counsel with no citation to any support, such as a declaration or other competent evidence from the record. It does not itself constitute evidence. *H2L1-CSC, JV*, ASBCA No. 62086, 21-1 BCA ¶ 37,956 at 184,340. That no one associated with Delfasco testified in support of its counsel's claims is no mere technicality. Accordingly, Delfasco has failed to make a showing that when it entered the contract it interpreted steel to mean gray iron. It has not met the prerequisite necessary for us to entertain extrinsic evidence of trade practice.

Though Delfasco has not made the necessary threshold showing of reliance to introduce evidence of trade practice, even if we were to consider what Delfasco has offered, it does not suggest that industry considers gray iron to be the same as steel.

BCA ¶ 34,300 (finding the contract ambiguous); *PK Contractors, Inc.*, ASBCA No. 53576, 04-2 BCA ¶ 32,661 (finding the contract ambiguous); *Int'l Source and Supply, Inc.*, ASBCA Nos. 52318, 52446, 00-1 BCA ¶ 30,875 (holding the Board could not discern parties' contractual intent from the language of the agreement so resorted to extrinsic evidence); *Fairchild Indus., Inc.*, ASBCA No. 46197, 98-2 BCA ¶ 29,767 (denying summary judgment given conflicting evidence in the record as to the parties' intended meaning of the term "Phase-out Costs").

If anything, the websites it relies upon confirm the definitions set out above. In a discussion of graphite cast iron, a site called "Total Materia," says that "[c]ast irons, *like steels*, are basically alloys of iron and carbon," distinguishing the two materials. *Vermicular Graphite Cast Iron*, TOTALMATERIA.COM, https://www.totalmateria.com/page.aspx?ID=CheckArticle&site=kts&NM=263 (last visited Aug. 18, 2023) (emphasis added).[4] Another, called "AZO Materials," describes the difference, saying gray irons "are iron-carbon alloys (and a form of cast iron) with carbon contents in excess of 2%, generally in the range of 2 to 4%. . . ."[5] Consistent with our prior observation about the lower carbon in steel, it explains gray irons "differ from steels in that the carbon present exceeds the solubility limit of 1.7%." *An Introduction to Grey Iron*, AZO MATERIALS, https://www.azom.com/article.aspx?ArticleID=783 (last visited Aug. 18, 2023). The website for "Zen Young Technologies & Solutions," distinguishes steel and cast or ductile iron, noting that steel contains 0.1 to 1.7% carbon, while separately stating that cast iron is 1.7 to 5% carbon. *Characteristics of Ductile Iron*, ZEN YOUNG, https://www.zen-young.com/news/characteristics-of-ductile-iron.html (last visited Aug. 18, 2023). "Metallurgy for Dummies | The Metallurgy's Blog for Beginners," says that "[c]arbon (C) and silicon (Si) are the main alloying elements" of gray iron, "with the amount ranging from 2.1 to 4 wt% and 1 to 3 wt% respectively. Iron alloys with less carbon content are known as steel." *Grey Cast Iron – Meaning and Definition*, METALLURGY FOR DUMMIES, https://www.metallurgyfordummies.com/what-is-grey-cast-iron.html (last visited Aug. 18, 2023). An article from "Springer Link," compares ductile cast iron to steel, observing steels have "by definition much lower carbon contents." SPRINGER LINK, https://link.springer.com/article/10.1007/s13632-018-0478-6 (last visited Aug. 18, 2023). None of the sources cited by Delfasco say that gray iron is the same material as steel (app. opp'n at 16-17).

Delfasco's other purported evidence is its contention that the contracting officer did not object, either in her two claim denials or in the parties' intervening February 25, 2022, phone call, to Delfasco's suggestion that the bomb bodies are composed of steel.[6] It maintains this constitutes pre-dispute evidence that the government also believes the

---

[4] The government does not challenge the authenticity of the web sources cited by Delfasco, so we accept them for the purpose of this discussion.

[5] Another source provided by Delfasco, the ASM Specialty Handbook Cast Irons, generally reiterates these percentages, saying "[b]ecause carbon is dissolved in the molten iron in amounts of about 2.8 to 4.0%, gray iron has the lowest casting temperature, the least shrinkage, and the best castability of all ferrous metals" (app. opp'n, ex. B at pdf p. 22).

[6] Delfasco's only cited evidence of the contents of the February 25, 2022, phone call is the final decision (app. opp'n at 14 (citing R4, tab 70 at 792-96)). That document does not purport to fully recite what was said during that discussion.

gray iron in the bomb bodies is steel. Though it is true that "[t]he parties' interpretation of the contract during performance, before a dispute arose, is demonstrative of their contractual intent," *Parsons-UXB Joint Venture*, ASBCA No. 56481, 13-1 BCA ¶ 35,378 at 173,598 (citing *Max Drill, Inc. v. United States*, 427 F.2d 1233, 1240 (Ct. Cl. 1970)), that principle applies to communications occurring prior to the circumstances giving rise to the dispute. *See ECC Int'l Constrs., LLC v. Sec'y of the Army*, 817 F. App'x 952, 955 (Fed. Cir. 2020). Here, those circumstances are the increased prices experienced by Delfasco and its resulting EPA claims. The government's final decisions and phone call did not predate the dispute events. Nor does Delfasco cite any other authority for the proposition that failure by a contracting officer's denial to address every aspect of a claim constitutes evidence that the government consents to the points not discussed. *See Wilner v. United States*, 24 F.3d 1397, 1401-03 (Fed. Cir. 1994) (en banc) (holding a contracting officer's decision is not "an evidentiary admission of the extent of the government's liability," and the contractor must prove liability and damages *de novo* to the Board on a clean slate); *accord Wright Bros., the Bldg. Co., Eagle LLC*, ASBCA No. 62285, 23-1 BCA ¶ 38,255 at 185,777.

Two other short observations put forth by Delfasco are that iron ore is not used to produce gray iron and that gray iron is often stronger than steel. Neither point helps it establish that gray iron is steel. If anything, the latter suggests the opposite by distinguishing the two materials.

In summary, the EPA clause unambiguously applies only to steel. It is undisputed the bomb bodies that Delfasco claims have increased in price are composed of gray iron. The plain and ordinary meaning of steel does not encompass gray iron. Delfasco has not met the reliance standard necessary to induce us to consider extrinsic evidence of trade practice that might depart from the words' ordinary meanings. Even if it had, none of the evidence it offers sufficiently suggests that steel and gray iron are the same to establish a genuine issue that would defeat summary judgment for the government. Given our ruling that the gray iron contained in the bomb bodies is not steel, we do not consider the other grounds advanced by the government in support of its motion.

<u>CONCLUSION</u>

The government's motion for summary judgment is granted. The appeals are denied.

Dated: September 25, 2023

MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 63280, 63402, Appeals of Delfasco LLC, rendered in conformance with the Board's Charter.

Dated: September 25, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

8